Case number 21-1108 Eastern Missouri, Window World International et al. v. Jill O'Toole et al. Mr. Leitner. Thank you, Your Honor. May it please the court, I am Mark Leitner. I'm here on behalf of Window World Inc. and Window World International LLC. I'd like to reserve three minutes for rebuttal, please. This is a trademark infringement suit in the district court brought by Window World, a company that markets and distributes home remodeling products. One of Window World's big selling points is its broad warranty. Everyone who buys a Window World window has a warranty for as long as they own the home in which it's installed. Window World brought this case because a franchisee and one of its employees, and I will refer to the defendants in the court below as the Lomax parties, sent a letter to consumers on a letterhead that had the Window World logo and marks. It made a blatantly false statement about the warranty. It said, if you want to retain your warranty, you have to call us. So Window World brought this action because that was a misleading statement used in connection with the trademark, and it was beyond the scope of the trademark license. The Lomax parties are plaintiffs in a lawsuit that is now pending in the state courts of North Carolina. There are many, many issues in that case, but nothing in that case would give franchisees of Window World the unfettered right to make false statements, and nothing of the relief in that case would deprive Window World or Window World International. That state court would have concurrent jurisdiction over your Lattimac claim, right? Well, it would have concurrent jurisdiction. Yes, it would. And there was no attempt made by Window World to assert a counterclaim? Well, number one, the date for amending pleadings had long, long passed in that case. The case has been going on for a long time. I believe it's since the very, very earliest days of 2016, discovery closed. Wait, wait, wait. I understand all that, but there was no, I simply ask, was there any attempt to assert a counterclaim? There was not. Okay. Or was there a separate action filed in state court by Window World, which could then be consolidated with the Lomax case? There was not. So this was a purposeful attempt to multiply the judicial proceedings? Your Honor, with all due respect, we do not characterize it that way. That's because you aren't the judicial victim of multiplicity. Well, Your Honor, let me say, number one, when we filed this lawsuit, we were suing Jill O'Toole, who was the person who wrote the letter. The only place where we were able to obtain personal jurisdiction over Jill O'Toole was here in this judicial district where we filed. You asserted three claims in the district court, threw two of them out. So the only thing left is the Lanham Act claim. Everything else failed to state a claim. That's correct. So, okay. So two-thirds of the multiplicity didn't even get to first base. And the third thing, the only surviving claim, I think you're conceding, could have been asserted in the North Carolina court. It could be asserted in a North Carolina court. However, I did... And the district court cited Quackenbush for the proposition that it didn't have to have both engines running at the same time. Seems to me that's perfectly good law. The district that, Your Honor, I do not believe that is how the district court analyzed the case with all due respect. I believe... You want me to go to the page and read the quote, quote, the citation, the district court citation of Quackenbush? I just read it last night. The decision, the... All right. Well, the Quackenbush citation is to... It's on page 10 of the decision, Your Honor. It says, when applying traditional abstention principles to actions for damages, district courts may stay the federal action. This was specifically brought as a Colorado River abstention motion. And as such, the first issue in any Colorado... As you well know, Colorado River is not truly an abstention principle. Yeah. It is a provision. It is a principle that allows a district court, if there are parallel proceedings, it allows the district court the discretion to stay or dismiss litigation in order that the parallel proceeding in the state court can be completed so there isn't some sort of undue inconsistency or interference between the two judicial systems. The threshold issue, as the court dealt with it below, the threshold issue in any Colorado River abstention case is, are there parallel proceedings? This court's precedents make clear that that for the five discretionary factors are applied. This court's test for parallel proceedings... Counsel, you correct me if I'm wrong, but Quackenbush was primarily a Burford abstention, which is a true abstention principle. And the court worked through the equitable origins of that kind of abstention and said it doesn't apply in damage actions. But then it noted quite carefully that in a Colorado River type case of what you might call case management abstention, that can be applied to damage actions, just as I happily had held in the Wolfson case some years earlier. And that was the basis, as I read the district courts inferred the reasoning, that was the reasoning that the district court was applying. And you could say this is Colorado River abstention and the only thing you can do is march through the six factors, but that's who you... It's not, they're not, they're not, they're not exclusive factors and they're not factors that always have to be taken into account. And the Eighth Circuit has said probably at least three times that the, you know, factor three is the most important. Well, that's what we're dealing with here. Well, here, your honor, the threshold issue in any case where, and this is a motion that was brought for Colorado River abstention, the threshold issue is are there parallel proceedings? And the court decided that there weren't. Only when the court decides that there are parallel proceedings, do we even look at the five... Wrong. You're just wrong on that. At least in my opinion, my colleagues may say I'm wrong, but I think that flat assertion is wrong as a matter of law. I would point the court directly to, and I don't want to... The dicta at the end of Wolfson is what you're going to read to me. No, I'm not, your honor. I'm going to read to, I'm going to read to the court the passages from this court's decisions in the Frucon case and in the Cottrell case. I'm glad you, I'm glad you brought that up. You understand that the, the opinion that you're relying on in Frucon was a dissent. It was the, it was the lead opinion on that, but on that point that you want to cite it, it had, it had no other votes. The Colorado River, the Cottrell case also holds to a similar, also establishes the same point. And the Cottrell case further states that when any doubt as to the parallel nature of concurrent state and federal proceedings exists, the district court cannot utilize Colorado River to refuse its jurisdiction. And I am not aware of any... But it could use Quackenbush. The district court, I do not believe the district court's decision here can be read as an invocation of Quackenbush on that point. The district court clearly believed based on the papers that were filed by the moving party and based on the briefs that we filed in opposition and that the Lomax parties filed in reply, the court approached this as a Colorado River motion. And it decided this case as a Colorado River motion. It decided first that the proceedings were parallel. Why aren't they parallel here? Why isn't there a substantial likelihood or whatever the phrase is that the North Dakota, North Carolina case would resolve the scope of the license in a way that would resolve this Lanham Act claim? The short answer, Your Honor, is that the North Carolina case does not place that issue into play as to the scope of the trademark license. The trial court's basis for concluding that it did rests on paragraph 341, which is at page 104 of our appendix, where the court concludes that the following language, all plaintiffs are entitled to a... That's because you didn't put it in play. You wanted to run halfway across the country and involve the Lomax plaintiffs, at least some of them, in another proceeding for whatever leverage that provided. Well, Your Honor, first of all, we believed that the only place we could sue the person who had actually written the offending letter was in the district court below. As far as we know, Ms. O'Toole lives here and couldn't be sued in North Carolina. We certainly have a right to try to enforce our trademarks. In fact, one of the... Okay, but that was thrown out. Now we're left with something that you could be. If the Lomax case was in North Carolina federal court, you'd be there in a flash under Forum None. But they're in state court, so the federal court has to figure out how to achieve the most piecemeal litigation, most important Colorado River factor, when dealing with another sovereign's judiciary. And a great many cases have held a stay is often the most effective and certainly an appropriate exercise of discretion to achieve that. Lots of circuit... I don't think the Supreme Court has addressed that directly, but circuit courts in the wake of Colorado River and Quackenbush have said, yes, despite Justice Brennan saying a stay is just as bad as a dismissal, that's not the prevailing national law. And so why did the district court abuse its discretion? The district court, the part of the decision that is the focus of this Appeal, Your Honor, is whether the proceedings are parallel, the threshold issue. Well, since you say that, okay, maybe you can convince my two colleagues, but I don't think it's... I don't think it is a threshold game breaker. It is not... And besides which, they are substantially similar in the sense that an evaluation of the extent of the likelihood that the resolution of the state cases will simplify or even eliminate the need for the federal court to do more. The flaw in that reasoning, Your Honor, is that the state court case does not, in fact, involve a challenge to the scope of the trademark rights that Window World has. It doesn't question... It is not going to result in Window World being deprived of... You know, you say that. I say, let's see what the state court does with all this. Well, we do have... And then see what's left. We've already... You haven't even appealed the dismissal of two-thirds of your case, and now you're speculating that the last third is going to be just fine regardless of what happens in North Carolina. Well, let's wait and let's see. Where's the prejudice to anyone? Your Honor... Of doing this sequentially. The prejudice to us right now is that we can't take discovery on any of these issues. We don't know who received this letter. We don't know how many people called in and contacted. We don't know anything about those things. Who cares? Well, then the discovery is going to be there. Because if we take... What kind of prejudice is that other than the billable hours? The prejudice is that when time passes, people's memories fade. People may not remember... People who sent in a letter or didn't send in a letter, that doesn't change. People may not remember about the phone calls. The recollections of individuals are important. Complete records are important. People who received these letters may no longer have records of them. Mr. Leitner, going back to the parallel proceedings question, even if the district court misread this without limitation phrase, doesn't the complaint also allege more generally, though, that the case is about the right to use the trademarks and to be free from intrusion from window world into business affairs and so forth, in a way that would suggest the court in North Carolina is going to have to make some decisions about the scope of the license? Of the trial court. They have identified, for example, and this is on appendix page 103, they've identified the parts of the written agreements that they say are not enforceable. And none of those parts identified have anything to do with the trademark rights. They have admitted in a number of places, at appendix 242 and again at appendix 317, they admit that we have trademark rights. And that we have... Not only that, we apparently do not adequately police infringements of those trademark rights in ways that they don't explain in those documents. So there isn't really anything in any of the underlying claims, whether that is in how those claims are alleged or in how the plaintiffs in North Carolina have explained the basis of those claims that would put the scope of the trademark license into issue. As many things as are at issue in this case, and the court has seen the complaint and the discovery, that is not among them. And it can't even be fairly read as something that is being inferred into the case. And I suspect that I've exhausted not only my original 12 minutes, but my rebuttal. If I have any rebuttal, I'd like to reserve that. Very good. Well, you answered our questions and that's always helpful. Let's see, Mr. Rodenbaugh? Sorry, Your Honor, I was on mute. Thank you, Your Honor. May it please the court, my name is Andy Rodenbaugh, and it's my pleasure to be here representing the Lomax parties who are the appellees in this case. A district court's inquiry into whether to stay federal litigation in deference to pre-existing state litigation is necessarily dependent on unique facts and circumstances of both the pre-existing state case and the federal case. And I want to jump right in, Your Honor, to talking about what Mr. Leitner said about the scope of the claims in the North Carolina case. The North Carolina case is a wide-ranging lawsuit between a number of Window World dealers, including the Lomax parties and Window World, over the fundamental nature of their relationship, which includes, and I disagree with of the Lomax parties' rights to operate as Window World dealers who have a license to use Window World trademarks and sell Window World's trademark products. The North Carolina plaintiffs have made declaratory claims regarding the source of their rights to use Window World trademarks. They don't just argue that certain provisions of the licensing agreements are unenforceable, they argue that their license rights are determined by a course of dealing or oral agreements and that the licensing agreements as a whole are unenforceable. And they have also brought to issue the scope of those rights, and in particular, for this case, the ability of the Lomax parties to exercise their license rights and operate as Window World dealers without interference or intrusion by Window World into their day-to-day business activities. And that's clear, I think, in the inter-auditory response that Window World cited in their brief on page 17, from page 242 of the record, where the plaintiffs in the North Carolina case said, that they believe the terms of their agreement with Window World give them the right to continue to use the Window World trademarks and to do business under the Window World name, free from day-to-day interference from Window World. That is what the North Carolina plaintiffs plead is a term of their agreement with Window World. And Window World's pursuit of the claims in this lawsuit in the federal forum runs directly counter to those claims made in North Carolina. This dispute, as I think Window World concedes, is over the transmission of a single letter by the Lomax parties to their customers, not to Window World's customers, to Lomax parties' customers, the content of which Window World finds objectionable. And Window World does not dispute in this lawsuit that we have the right to use the trademarks. And they don't claim that we didn't have the right, the Lomax parties didn't have the right to send a letter to these people, that we didn't have the right to use the Window World trademarks on a letter to these people, or that we didn't have the right to advertise and sell Window World products to them. They simply alleged that the content of the letter was not accurate. And that's why they've said it's so important that the parties, they believe the Lomax parties lied in that letter. We disagree with that. The Lomax parties strongly dispute that there was anything false in the letter and will dispute that when the time comes to address the merits of the that the letter contains false statements takes it outside the scope of the North Carolina litigation is simply not true. The Lomax parties have claimed that they have the contractual right to communicate with their customers about Window World products and use the Window World trademarks in doing so without interference. And in making that claim, they could not have anticipated every way in which Window World might interfere eventually in this exact matter. And your honors are right to pick up on the fact that Window World could have brought this claim in North Carolina. In fact, after Window World brought this claim in federal court of Missouri, they filed a separate lawsuit against another of the plaintiffs in the North Carolina litigation, which they filed in North Carolina state court and was consolidated with the North Carolina case. Their only justification for filing suit here that I've heard Mr. Leitner say is that they originally sued a party named Jill O'Toole. And as is shown in the record in the motion to dismiss the claims against O'Toole that was made, the original complaint that was made, Window World knew that Ms. O'Toole was an employee of the Lomax parties in the operation of their Window World business and knew that if the letter had been sent by Ms. O'Toole, it was sent by those parties. So as we argued previously, suing Ms. O'Toole was an attempt to evade exactly this discussion that we're having right now and claim that they had a basis for suing in Missouri. But Ms. O'Toole was out of the case now. All the claims against Ms. O'Toole have been dismissed. She's no longer a party. And the only parties remaining are those that are litigating these core contractual issues in North Carolina. I don't think Mr. Leitner has denied. In fact, I think he said in his argument that they will argue to the district court that the letter that was sent was beyond the scope of the trademark license. And as we have cited in our brief, when a trademark infringement claim is brought against an admitted licensee, that claim requires the plaintiff show a breach of contract. So whether Mr. Leitner and Window World want this to be a breach of contract case or not, they will have to show a breach of contract to prevail on their claims. And that will necessarily start with the district court having to determine what is the agreement between these parties and what is the litigated in North Carolina. So in bringing these claims, while they're styled as trademark infringement claims, Window World has put into dispute the same contractual issues that have been litigated for years in North Carolina. And that's why the district court properly determined that these cases are parallel and that it should stay this case in deference to the pending North Carolina action, not dismiss, as your honors properly noted. This case will remain stayed if the North Carolina litigation doesn't address these claims, which we think it will, then we can return to it then. We've analogized to the decision in Davey Union Mines, which is a case from the Seventh Circuit, which is of course not binding on this court, but we believe is persuasive. And the court in the Seventh Circuit applied the same standard as this court to determining whether cases were parallel and should be stayed, that there must be a substantial likelihood the state litigation will dispose of the federal case. And what the court ultimately held is that even though the same issue, contractual issue, being litigated in state court was not being litigated in federal court, the overriding subject matter of the state court litigation was the cluster of rights and obligations, the contract rights and obligations being litigated in state court. And so the court ultimately held that staying was proper, where the validity and forcibility and interpretation of a contract are at issue in both lawsuits. And the state court proceeding has progressed substantially towards completion. And that's the situation we have here. This case was actually filed, I'm sure Mr. Lightyear was just mistaken, but it was filed in the early days of 2015, not 2016. This case has been pending now for almost seven years in North Carolina State Court. And it was at the same time the Wendell World parties were filing this lawsuit, they were delaying the North Carolina lawsuit because they had just had a large discovery sanctions order entered against them, finding them responsible for numerous discovery abuses that they didn't appeal, which caused the North Carolina litigation to be paused for the better part of two years. And so we think that the district court properly was concerned about that and properly was concerned that Wendell World had not dispelled the suggestion that they were filing this lawsuit for strategic purposes rather than to genuinely assert a coin for relief. So when weighing that concern of the other circumstances of this case that I just discussed, the district court properly recognized that to allow this lawsuit to proceed would inevitably result in piecemeal adjudication of the core contractual issues that were being litigated in North Carolina. Because federal district courts have the discretion to stay a exceptional cases like this one, where long running state litigation is going to address the core threshold contractual issues. The district court did not abuse its discretion or otherwise err and stay in this case and it should be affirmed. And I see that I've got several minutes left, your honors, and I'd be happy to answer any questions that you might have. Counsel, just something you've looked at, you researched these Colorado River Eighth Circuit cases more than I have. More recent than Frucon and Federal Rural Electric and Cotrell is Judge Murphy's opinion in Spectra, which was 806 F3rd, which again re-emphasized that piecemeal litigation is the most important factor. Is there any case since Not that I'm aware of, your honor. I would be happy to go back and look and send you anything that we find, but I'm not aware. That's what we're here for. And I think the district court cited Spectra too. Thank you, your honors. If there are no further questions, I will conclude. See the rest of my time. Very good. Mr. Leidner for Repuddle. Yes. The point that I want to address is that the, no matter how the North Carolina case is characterized, when we look at what was actually alleged in the North Carolina case, whether it is, does not apply in terms of the written agreements, and they specified that quite carefully, or whether we look at what they are claiming, there is nothing in the pleadings or in the discovery that hones or fleshes out the claims that the North Carolina plaintiffs, including the Lomax parties are making. There is nothing in any of these documents that would undermine or question or destroy Window World's right to sue its franchisees, including the plaintiffs in North Carolina, for infringing the trademark. What if the North Carolina court says, you haven't been policing these marks. You've basically given up any right to try to restrict how the other parties use them. That's your course of dealing, and you can intrude on how they use them, which is, as I understand it, part of their claim. Suppose you get a broad ruling like that from the North Carolina courts, wouldn't that undermine your claim in this federal case? Well, what they have, they have not, so far as I know, your Honor, and we've tried to put everything in front of the court, they have made that argument, but they have not sought that relief. They have not asked, there is nothing in these pleadings that seeks to deprive Window World of the right to police its trademarks, to enforce its trademarks, nothing that questions the Window World entities' ownership of the trademarks, nothing along those lines. The relief simply is not that bold or broad. All right, we'll take a look at that further. Thank you. Thank you. Very good. Thank you, counsel. Again, the case is, it's a complex case with now a long history, not getting any shorter, but it's been well-briefed and argued, and we'll take it under advice.